821 So.2d 911 (2002)
A.Q. WILSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01275-COA.
Court of Appeals of Mississippi.
July 16, 2002.
*912 A.Q. Wilson, Pro Se, appellant.
Office of the Attorney General By John R. Henry, Jr., attorney for appellee.
Before SOUTHWICK, P.J., BRIDGES, and BRANTLEY, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Albert Quincy Wilson was found guilty of three offenses: assault on a law enforcement officer, robbery, and escape. On appeal his attorney filed a statement that he found no grounds on which to allege error. Wilson then filed his own brief, alleging quite generally that his counsel was ineffective and that a multitude of state and federal constitutional provisions were violated in the trial court. We find no error and affirm.

STATEMENT OF THE FACTS
¶ 2. A.Q. Wilson was an inmate in the Coahoma County jail being held on a robbery charge. On May 12, 2000, with the assistance of another inmate, Wilson physically assaulted and robbed the jailer on duty, taking the jail keys and about $150 in cash, and escaping. Wilson was apprehended that same night. Wilson was convicted after a jury trial on three counts that arose from the escape. For each offense he was sentenced to life without the possibility of parole.

DISCUSSION
¶ 3. On this appeal, Wilson's counsel filed what has in the past been called a "Killingsworth brief." Killingsworth v. State, 490 So.2d 849, 851 (Miss.1986). In situations in which the counsel for a criminal defendant finds it impossible within the ethical rules to allege any grounds for reversal of a conviction, the counsel may file a statement to that effect. The defendant is notified of this conclusion by counsel and has an opportunity to file his own brief. More recently, the requirements for such a brief have been altered. It is more appropriate now to refer to a Turner brief:
The appellate counsel must: (1) determine that the defendant was unlikely to prevail on appeal; (2) file a brief indicating that he scoured the record thoroughly and referred to anything in the record that might arguably support the appeal, and; (3) advise his client of his right to file a pro se supplemental brief. At this point, the appellate court shall then make its own examination of the record....
Overstreet v. State, 787 So.2d 1249, 1255 (Miss.2001), quoting Turner v. State, 818 So.2d 1186 (¶ 11) (Miss.2001).
¶ 4. Wilson's attorney filed a one-page statement containing this operative language:
Comes Now, Allan D. Shackelford, attorney of record for the Defendant/Appellant *913 in the above [styled] and numbered cause to the Court that he has scoured the record throughly for reversible error and finds that the record contains none that would not be frivolous to present to this Court. Therefore, counsel for Defendant/Appellant has determined that the defendant is unlikely to prevail on appeal. Said attorney cannot call to the attention of the Court or Defendant/Appellant any items in the record that might arguably support an appeal.
This statement reveals that the first two Turner requirements were met. Counsel served this brief on Wilson as well as on the State. There is nothing in the record directly indicating that counsel informed Wilson that he could file his own brief. Wilson filed a brief, though, and thus the absence of evidence as to what prompted Wilson to do so is academic.
¶ 5. Wilson's brief lists in general terms several errors affecting his conviction. He states that he was not provided due process of law, was not allowed to confront witnesses, did not have reasonable assistance of counsel, is being subjected to cruel and unusual punishment, had his equal protection rights violated, did not receive a speedy trial, was convicted under an illegal indictment, and did not receive the benefits of the rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and the rights under Article 3, Section 14, 23, and 27 of the Mississippi Constitution.
¶ 6. Wilson cites the principal precedent on ineffective assistance of counsel,[1] but he does not elaborate on the nature of the failures of his counsel or of the basis for alleging these other violations. We have made an independent review of the record. Had we discovered potential error, the Turner procedure suggests that we should ask Wilson's counsel to brief that issue of concern. Overstreet, 787 So.2d at 1254. We find no reason to do so.
¶ 7. Our review of the record reveals that the sole issue worthy of discussion concerns the difficulties that arose between Wilson and his counsel. Allen Shackelford was appointed as Wilson's attorney on June 6, 2000. Within a month, counsel filed a motion for Wilson to be given a psychiatric examination as he had allegedly attempted to commit suicide while in his cell. The examination was ordered. A report from the Mississippi State Hospital dated almost a year later on June 18, 2001, indicates that Wilson was sent to the Whitfield hospital. There is no indication of when he arrived or how long he remained. He was found to be competent. Almost as soon as the report was prepared, a scheduling order set Wilson's trial for the following month. Trial began on July 26, 2001, or about seven weeks after this report. Wilson's general allegations about a denial of a speedy trial does not find support in the record. The only evidence of delay was as a result of the mental examination.
¶ 8. Trial opened with the judge, counsel, and Wilson meeting in chambers. Wilson had filed a motion to remove his counsel. According to the judge, a hearing on that motion had earlier been held, but we have nothing in the record regarding the reasons for the motion or for its rejection. On the morning of trial, Wilson denied having made any threats against his counsel, though we cannot determine what caused Wilson to make that denial. Wilson alleged that his counsel had not done anything on his behalf, and that he had not even seen his attorney. Wilson and the judge both indicated that the defendant was not getting along with his counsel.
*914 ¶ 9. Wilson attempted again to fire his counsel on the morning of trial, and responded with some belligerence towards the trial court when the judge refused to let him do so. He may have made some threatening motions towards the trial judge and was approached by a sheriffs deputy and told to keep his seat. Because of the manner in which Wilson was talking and acting, the judge told him that he would be gagged and bound during the trial if he did not remain calm. Wilson alleged that the judge had already decided to find him guilty and give him life without parole for the offenses. The judge brought some calm to the situation by describing what would occur next, namely, the selection of the jury, and after that selection another in-chambers conference could be held if it were needed. There is no record of any later conference.
¶ 10. A defendant's desire to remove his counsel on the eve of trial is a frequent appellate issue. We have no direct evidence as to what transpired between Wilson and his counsel until the morning of trial. An accused has the right to effective counsel but not to appointed counsel strictly of his own choosing. Henley v. State, 729 So.2d 232, 237 (Miss.1998). When a defendant seeks to have his appointed counsel removed, the sound discretion of the trial judge is invoked. Atterberry v. State, 667 So.2d 622, 630 (Miss. 1995). Substitution of counsel is not allowed when the apparent purpose is to thwart the progress of trial. Benton v. State, 766 So.2d 823, 826 (Miss.Ct.App. 2000).
¶ 11. We do not know when the earlier motion was filed. Since the record is silent, that is a matter that could be addressed with a proper record on post-conviction relief if Wilson so desires. There is nothing here on which to base a conclusion that the trial court erred. What the court never did is to offer to let Wilson represent himself. However, Wilson did not make a request that he be allowed to do so. We find no need for the court to raise that option. Had the court become aware that this defendant desired to act as his own counsel, then specific procedures would have been invoked for determining whether that choice was knowing and voluntary. See Taylor v. State, 812 So.2d 1056, 1059 (Miss.Ct.App. 2001); URCCC 8.05.
¶ 12. We find nothing in our review of the record, both independently searching for error and also considering the quite general allegations that Wilson made, to cause reversal.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT I SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER; COUNT II ROBBERY; AND COUNT III ESCAPE AND THE THREE SEPARATE LIFE SENTENCES AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCES IMPOSED SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).