989 So.2d 958 (2008)
Frederick C. ELLIS a/k/a Frederick Charles Ellis, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01163-COA.
Court of Appeals of Mississippi.
March 4, 2008.
Rehearing Denied June 17, 2008.
Certiorari Denied August 14, 2008.
*961 Fredrick C. Ellis (Pro Se) W. Daniel Hinchcliff, attorneys for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before KING, C.J., ROBERTS and CARLTON, JJ.
ROBERTS, J., for the Court:
¶ 1. Frederick C. Ellis was found guilty of sexual battery and statutory rape of C.B. after a trial in the Circuit Court of Harrison County.[1] During the trial, C.B. testified that Ellis had been sexually abusing her for several years. She further testified that when she was thirteen years old he had sex with her at approximately the time of the conception of her son. Blood samples were taken from Ellis, C.B., and C.B.'s son. After of the samples were analyzed, Ellis was determined to be the father by a probability of 99.999998%. Aggrieved with the jury's verdict and the trial court's subsequent denial of his motion for new trial, Ellis now appeals and raises the following issues:
I. WHETHER ELLIS WAS GIVEN ACCESS TO ALL COURT RECORDS IN PREPARATION FOR HIS APPEAL.
II. WHETHER ELLIS'S CONSTITUTIONAL RIGHT TO CONFRONT WITNESSES WAS VIOLATED.
III. WHETHER ELLIS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO PROVIDE ELLIS WITH AN INDEPENDENT DNA TEST.
V. WHETHER THE TRIAL COURT ERRED IN DENYING ELLIS'S REQUEST FOR NEW COUNSEL.
VI. WHETHER THE JURY WAS COMPOSED OF A FAIR CROSS-SECTION OF THE COMMUNITY.
VII. WHETHER THE STATE IMPROPERLY ADDRESSED THE JURY DURING VOIR DIRE.
VIII. WHETHER THE PROSECUTION WITHHELD EVIDENCE FAVORABLE TO THE ACCUSED.

*962 IX. WHETHER ELLIS'S DUE PROCESS RIGHTS WERE VIOLATED AS A RESULT OF WITNESSES BEING QUESTIONED.
X. WHETHER ELLIS'S FOURTH AMENDMENT RIGHTS WERE VIOLATED.
XI. WHETHER ELLIS'S CONSTITUTIONAL RIGHTS WERE VIOLATED BY TAKING A SAMPLE OF HIS BLOOD.
¶ 2. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 3. On May 10, 2004, Ellis was indicted by the grand jury of the First Judicial District of Harrison County on one count of sexual battery in violation of Mississippi Code Annotated Section 97-3-95(1)(d) (Rev.2006) and one count of statutory rape in violation of Mississippi Code Annotated section 97-3-65(1)(b) (Rev.2006) based upon the alleged sexual act that occurred in or around July 1999. Ellis pleaded not guilty to the above crimes, and a trial on the matter commenced on March 22, 2005. Prior to trial, Ellis's court-appointed attorney submitted two motions to the trial court requesting a psychological evaluation and an independent DNA test. The trial court denied the motion for a psychological evaluation, but it granted Ellis's request for an independent DNA test, albeit at his own expense. The day prior to trial Ellis motioned the court pro se to have his court-appointed counsel replaced, claiming that he did not believe his attorney could represent him. This request was also denied.
¶ 4. The victim was the first witness to testify for the State. C.B. stated that she was born in June 1986, and she was eighteen years old at the time of trial. According to her testimony, Ellis began living with her mother when she was six years old, and she considered him her "daddy." Soon after Ellis moved in with C.B.'s family he began to have sexual relations with her every other week. Specifically, C.B. stated that one sexual encounter between her and Ellis occurred in or around July 1999. C.B. stated that she never asked Ellis to have sex with her, and he would threaten her and warn her not to tell anyone. In April 2000, C.B.'s son was born. C.B. stated that Ellis sexually abused her every day of her pregnancy and told her to get an abortion.
¶ 5. M.E., who was thirteen at the time of trial, is Ellis's biological daughter and C.B.'s half-sister. M.E. testified that in 2003, when she was in elementary school, the school counselor asked her if Ellis was improperly touching C.B. She responded in the affirmative to the counselor. M.E. testified that when she was four years old she saw her sister, C.B., with her pants down and Ellis on top of her. On cross-examination, M.E. testified that she could not recall whether the incident occurred during the school year or summer, whether it was hot or cold outside, what month it was, or exactly what year.
¶ 6. Investigator Rosario Ing with the Gulfport Police Department became involved in the investigation in August 2003 after M.E. spoke with her school counselor. Investigator Ing testified that Ellis's date of birth was August 19, 1959. She further stated that she witnessed a blood sample being taken from Ellis on August 27, 2003. The sample was subsequently subjected to DNA testing at ReliaGene Technologies in New Orleans, Louisiana and compared to blood samples taken from C.B. and her son. Dr. Megan Shaffer, a doctor employed with ReliaGene, testified that the tests revealed that Ellis was fifty-eight million times more likely to be the father of C.B.'s son than a random male; however, on cross-examination, she indicated *963 that this number could change plus or minus 10% based upon the non-local gene pool used as a base. Dr. Shaffer further stated that the probability that Ellis was the father was 99.999998%.
¶ 7. Ellis took the stand in his own defense. He testified that he did not have sex with C.B. at any time.
¶ 8. Following the trial, the jury returned verdicts of guilty on both counts. The trial court sentenced Ellis to twenty years in the custody of the Mississippi Department of Corrections for each count. The trial court ordered the sentences to be served day for day and to run concurrently.
¶ 9. Ellis's attorney filed a motion for a new trial, which was subsequently denied by the trial court.[2] Following the trial court's denial, this instant appeal followed. Ellis's appellate counsel filed a brief pursuant to Lindsey v. State, 939 So.2d 743 (Miss.2005), indicating that he could not identify any arguable issues to raise on appeal. However, in accordance with Lindsey, Ellis submitted an additional brief pro se.

ANALYSIS

I. WHETHER ELLIS WAS GIVEN ACCESS TO ALL COURT RECORDS IN PREPARATION FOR HIS APPEAL.
¶ 10. Ellis cites Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and the Sixth Amendment in support of his argument that he was denied access to his court records. However, he does not name the documents or otherwise indicate their origin, content, or what effect, if any, they would have had on his preparation for appeal. Without such information, there is nothing for this Court to review. Therefore, this issue is without merit.

II. WHETHER ELLIS'S CONSTITUTIONAL RIGHT TO CONFRONT WITNESSES WAS VIOLATED.
¶ 11. On appeal, Ellis argues that he was denied his right to confront witnesses against him when the State's DNA expert was allowed to testify on the DNA test administered to him, although she did not directly participate in the testing. However, at the time the expert testified there was no objection voiced based upon an alleged violation of Ellis's constitutional right to confront the witnesses against him. Therefore, preservation of this issue was waived. Hodgin v. State, 964 So.2d 492, 495(¶ 7) (Miss.2007). We find this issue to be without merit.

III. WHETHER ELLIS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 12. Ellis argues two instances of what this Court can only surmise to be claims of ineffective assistance of counsel. In order to succeed on a claim of ineffective assistance, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Also, Ellis must demonstrate that his counsel's performance was not only deficient, but also, he was prejudiced by the counsel's deficient representation. Jones v. State, 962 So.2d 1263, 1273(¶ 41) (Miss. *964 2007) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052).
¶ 13. First, Ellis argues that "court appointed counsel chose to [psychoanalyze] [the] appellant and not do an investigation of the facts." In support, Ellis lists random statements from a police report that were not admitted into evidence. The statements indicate he was investigated prior to being accused of the crime for which he was eventually convicted. Second, he states there were taped conversations between him and a former co-worker pertaining to his case. Ellis contends his attorney did not seek out this former co-worker. However, the record neither reveals how the tapes or the testimony of the former co-worker, or other witnesses, would have affected the outcome of the trial nor how Ellis was prejudiced by their absence.
¶ 14. Notwithstanding the record's lack of support for Ellis's claims of ineffective assistance of counsel, we do not reach their merits. In accordance with Read v. State, 430 So.2d 832 (Miss.1983), a reviewing court should not pass on the merits of an ineffective assistance of counsel claim brought on direct appeal unless the court is satisfied that "the record affirmatively shows ineffectiveness of constitutional dimensions." Read, 430 So.2d at 841. We are not so satisfied. We dismiss this issue without prejudice.

IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO PROVIDE ELLIS WITH AN INDEPENDENT DNA TEST.
¶ 15. Prior to trial, Ellis's trial counsel motioned the trial court to order an independent DNA test on the paternity of C.B.'s son. From the language of the motion, it is clear that Ellis never explicitly requested funds for the test; however, such a request can be inferred. It appears from the record that the trial court granted the request to conduct an independent test, but it denied the implied request that the court order the State to provide the funds for such a test. Ellis contends that the trial court erred in its holding and cites Polk v. Mississippi, 612 So.2d 381 (Miss.1992) in support.
¶ 16. A trial court's denial of funding for expert assistance is reviewed for an abuse of discretion. Flora v. State, 925 So.2d 797, 805 (¶ 11) (Miss.2006). Additionally, if it is determined that a trial court's decision amounts to an abuse of discretion the defendant must further show that the abuse was so egregious so as to deny him due process, rendering his trial fundamentally unfair. Harrison v. State, 635 So.2d 894, 901 (Miss.1994).
¶ 17. The portion of the Polk opinion discussing DNA testing and evidence focused exclusively on the general admissibility of evidence garnered from forensic DNA testing. Polk, 612 So.2d at 388-93. Though not at issue in the case, in an appendix to the majority opinion in Polk, the supreme court stated, "we find that due process considerations require that a defendant have access to an independent expert ... a defendant must ... be allowed reasonable funds for access to an expert who can independently evaluate the evidence presented against him by the State, analyze it, and present that analysis at trial." Id. at 394.
¶ 18. However, in Coleman v. State, the supreme court, after citing Polk for the proposition above, stated, "[d]etermination of whether the State must pay for an expert witness for an indigent defendant must be made on a case by case basis." Coleman v. State, 697 So.2d 777, 782 (Miss. 1997); Rubenstein v. State, 941 So.2d 735, 781 (¶ 202) (Miss.2006). Some of the factors a reviewing court should consider when determining if a defendant was denied *965 a fair trial as a result of a trial court's denial of funds for an expert include: "whether and to what degree the defendant had access to the State's experts, whether the defendant had the opportunity to cross-examine those experts, and lack of prejudice or incompetence of the State's experts." Thorson v. State, 895 So.2d 85, 122-23(¶ 89) (Miss.2004). Other factors include the extent to which the State's case depends on the State's expert and the degree of possible error associated with the matter for which the expert is requested. Id. at 123(¶ 89). Furthermore, the State will not be required to fund DNA testing if the defendant fails to show that it would "significantly aid the defense." Coleman, 697 So.2d at 782. This showing must be made through the employ of "concrete reasons, not unsubstantiated assertions that assistance would be beneficial." Harrison, 635 So.2d at 901.
¶ 19. Ellis argues the trial court erred in denying him the funds to procure an independent DNA expert, but he fails to provide any reason, unsubstantiated or not, how this would have significantly aided his defense. It can be reasonably inferred through Ellis's consistent declarations that he was not the father of C.B.'s child that it was his belief that an "independent" DNA test and analysis of Relia-Gene's findings would exonerate him. However, in this case, the simple claim that the State's expert and result of that expert's testing is wrong is not enough for this Court to find that the trial court abused its discretion in denying Ellis's request for funds.
¶ 20. Applying the factors above, there is no evidence in the record, or suggestion by Ellis, that the State's expert was biased or incompetent in any way, or that Ellis was denied access to Dr. Shaffer prior to trial. Additionally, Ellis's trial counsel took full advantage of the opportunity to cross-examine Dr. Shaffer. Lastly, while the result of the DNA test was a significant portion of the State's evidence against Ellis, it was not the only evidence against him. We cannot say that the trial court abused its discretion. This issue is without merit.

V. WHETHER THE TRIAL COURT ERRED IN DENYING ELLIS'S REQUEST FOR NEW COUNSEL.
¶ 21. The day before Ellis's trial was to begin, he personally motioned the court to remove his court-appointed counsel. He claimed his counsel, Frank Wittman, was generally unresponsive to his pretrial inquires, did not assist him in preparation for the trial, and failed to acquire the presence of certain witnesses Ellis had requested. The trial court informed Ellis of his right to defend himself and denied his request for new counsel. Ellis argues the trial court erred in denying his request for new counsel.
¶ 22. Many a defendant seek alternative counsel immediately before being exposed to the glare of a jury. However, an accused does not have the right to counsel of his own choosing. Wilson v. State, 821 So.2d 911, 914 (¶ 10) (Miss.Ct. App.2002). Although it is certainly not unheard of for a trial court to grant a defendant's request for new counsel, such a decision rests squarely within the trial court's discretion. Id. The record is bare as to exactly what transpired between Ellis and Attorney Wittman prior to trial. However, nothing in the record lends any credence to Ellis's claims. Therefore, we cannot say the trial court abused its discretion in denying Ellis's request for new counsel. This issue is without merit.

VI. WHETHER THE JURY WAS MADE UP OF A FAIR CROSS-SECTION OF THE COMMUNITY.
*966 ¶ 23. Without reference to the record, Ellis argues that the jury pool did not represent a fair cross-section of Harrison County and cites Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579(1979) in support of his position. However, any claims Ellis may have had regarding the composition of his jury were waived since he raised no objection prior to the jury being sworn in. McDowell v. State, 807 So.2d 413, 425(¶ 37) (Miss.2001) quoting Smith v. State, 724 So.2d 280, 330 (¶ 204) (Miss.1998)(quoting Conner v. State, 632 So.2d 1239, 1264 (Miss.1993)).
¶ 24. Notwithstanding the procedural bar, we find that Ellis nonetheless fails to show a violation of his constitutional rights. In order to establish a prima facie violation of the requirement for a fair cross-section, a defendant must show the following:
(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.
Yarbrough v. State, 911 So.2d 951, 955(¶ 7) (Miss.2005) (quoting Duren, 439 U.S. at 364, 99 S.Ct. 664). Ellis claims that the jury pool left out a "distinctive group" which led to an all white jury. While Ellis failed to identify this "distinctive group," we can assume that he refers to African Americans. Therefore, Ellis satisfies the first requirement of Duren as African Americans clearly constitute a distinctive group in the community. McGinnis v. Johnson, 181 F.3d 686, 689 (5th Cir.1999).
¶ 25. As for the remaining requirements, Ellis falls remarkably short. Not only must Ellis show that the number of African Americans on his venire was not a fair and reasonable representation of Harrison County, he must also show that this under representation was present not only on his jury, but it was the general practice in other venires as well. Yarbrough, 911 So.2d at 955(¶ 7). Ellis does not present any proof, or even argue, that such was the case. He provides absolutely no evidence of the composition of his jury pool, the composition of Harrison County in which to compare, or the composition of other venires drawn from Harrison County. Without such, we have no information to consider on appeal. Therefore, we find this issue to be without merit.

VII. WHETHER THE STATE IMPROPERLY ADDRESSED THE JURY DURING VOIR DIRE.
¶ 26. Ellis next claims that the State made improper comments to the jury during voir dire that prejudiced him. However, he fails to indicate exactly what those comments were or how they prejudiced him. Additionally, Ellis waived this assignment of error as no objection was voiced during any point of the State's voir dire. McCollum v. State, 785 So.2d 279, 283 (¶ 14) (Miss.2001).
¶ 27. Notwithstanding the procedural bar, from our review of the record, we can find no instance of the State making an improper comment during voir dire that would have resulted in a jury being incapable of reaching a fair and impartial verdict. This issue is without merit.

VIII. WHETHER THE PROSECUTION WITHHELD EVIDENCE FAVORABLE TO THE ACCUSED.
¶ 28. Ellis argues that the State withheld evidence concerning an incident that occurred in 1998 that would have been *967 favorable to his case and cites Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) in support of his arguments. Additionally, Ellis argues that the "prosecution questioned the appellant to the aspects of the 1998 incident giving the jury the indication appellant could have been guilty of the 1998 incident."
¶ 29. Although Ellis does not specify the incident, it appears from the record that Ellis refers to an alleged false allegation of sexual assault made in 1998 by C.B. against her grandfather. However, he does not give any indication of exactly what evidence was withheld or how it prejudiced him.[3] Testimony concerning the 1998 incident was first introduced at trial by the State, but it was at defense counsel's request that the 1998 incident was mentioned at all. Prior to trial, defense counsel motioned the trial court to allow testimony of the incident in an effort to show that C.B. had a history of false allegations. The trial court granted Ellis's motion.
¶ 30. During direct examination by the State, C.B. was asked who made her say her grandfather was molesting her, and she responded, "[Ellis] made me say it." She further explained that Ellis did not explicitly tell her to say her grandfather was the guilty party, but she stated, "[Ellis] would ask me who it was or he would say my grandfather, and if I said no, I would get hit." Lastly, as to the 1998 incident, C.B. testified that it was not her grandfather who molested her, but Ellis.
¶ 31. The State did question Ellis about the incident during cross-examination, but Ellis's issue is nonetheless without merit. Ellis waived his right to bring this issue on appeal as no objection was made at the time of trial. Mingo v. State, 944 So.2d 18, 28(¶ 23) (Miss.2006). Additionally, Ellis cites no authority on appeal whatsoever in support of this claim of error. Notwithstanding the lack of both an objection at trial and citation to controlling authority, it is clear from the record that the State's questions in this case concerning the false allegation were not improper. This issue is without merit.

IX. WHETHER ELLIS'S DUE PROCESS RIGHTS WERE VIOLATED AS A RESULT OF WITNESSES BEING QUESTIONED.
¶ 32. Ellis next argues that his right to due process was violated, as well as his Fifth, Sixth, and Fourteenth Amendment rights, when C.B. and M.E. were questioned during the pretrial investigation regarding Ellis's alleged sexual battery without Ellis being afforded an opportunity to confront the witnesses. However, Ellis again failed to voice an objection at trial concerning an alleged violation of his rights. Therefore, his right to raise such an issue on appeal is waived. Mingo, 944 So.2d at 28(¶ 23).
¶ 33. Notwithstanding this procedural bar, this issue is nonetheless without merit. C.B. and M.E. testified at Ellis's trial and were subjected to cross-examination. Therefore, Ellis's right to confront the witnesses against him was not violated. This issue is without merit.

X. WHETHER ELLIS'S FOURTH AMENDMENT RIGHTS WERE VIOLATED.
¶ 34. Ellis next alleges that his Fourth Amendment rights were violated as a result of his alleged warrantless arrest and subsequent vehicle search which led law enforcement to discover a gun. According to Ellis, the gun was confiscated, and he was allegedly told it was part of the case against him. However, Ellis now *968 cries foul as "at trial no testimony or evidence was presented as to how the weapon was part of the case against [him]."
¶ 35. Again, this issue was neither objected to prior to trial nor during trial; therefore, it is waived. Mingo, 944 So.2d at 28(¶ 23). However, reaching the merits of his claim of error, Investigator Ing testified that after C.B. completed an affidavit against Ellis, a valid arrest warrant was obtained. Ellis neither presents any evidence nor points to anything in the record that would cast doubt on this testimony. As to the confiscated weapon, the typical remedy for a violation of a defendant's Fourth Amendment rights at the trial level is exclusion of the wrongfully obtained evidence. Baker v. State, 802 So.2d 77, 79(¶ 7) (Miss.2001). Ellis admits that the weapon was never admitted against him or even mentioned at trial. This issue is without merit.

XI. WHETHER ELLIS'S CONSTITUTIONAL RIGHTS WERE VIOLATED BY TAKING A SAMPLE OF HIS BLOOD.
¶ 36. In Ellis's final claim on appeal he argues that the blood sample taken from him that was used in the subsequent DNA test, which indicated he was the father of C.B.'s son, was taken involuntarily. Ellis claims that Investigator Ing stated she would get a court order for the sample if Ellis did not voluntarily provide one, and this "threat" was the reason he cooperated. However, Investigator Ing was asked at trial during cross-examination whether Ellis was under a court order to give the sample, to which she responded "no." Investigator Ing also stated that she informed Ellis that he was not under a court order and advised him of his right to refuse to give the sample. Finally, she stated although Ellis stated he was not doing it voluntarily, he nevertheless signed the consent form for the taking of a blood sample.
¶ 37. The taking of a blood sample requires either a valid warrant or consent. Comby v. State, 901 So.2d 1282, 1285(¶ 5) (Miss.Ct.App.2004). When the issue concerns the voluntariness of the defendant in giving the sample, the trial court is given wide discretion in reaching its determination. Id. However, in this case, as with several of Ellis's prior issues, the trial court was not given the opportunity to address the issue as there was no objection as to the voluntariness of the sample made at the time of trial. This issue is waived. Mingo, 944 So.2d at 28(¶ 23).
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF COUNT I: SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS AND COUNT II: STATUTORY RAPE AND SENTENCE OF TWENTY YEARS, WITH SENTENCES IN COUNT I AND COUNT II TO BE SERVED DAY FOR DAY AND RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
NOTES
[1] In an effort to protect the identity of the minors involved in the case, initials will be used in place of their actual names.
[2] The trial court's ruling on the motion for new trial was delayed, and Ellis filed a motion to show cause with the trial court and a subsequent writ of mandamus with the supreme court. Prior to the supreme court ruling on his writ, the trial court denied Ellis's motions to show cause and for a new trial. Therefore, the supreme court dismissed Ellis's writ as moot. The issues addressed by this Court include those directly raised in this appeal, as well as those raised in Ellis's writ of mandamus.
[3] Though referred to as C.B.'s grandfather, the individual accused was not related to C.B.