# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01343-COA

FRANK THOMAS FRIDAY A/K/A FRANK
FRIDAY

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/2015 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT III, SEXUAL BATTERY, AND SENTENCED TO TWENTY YEARS, WITH FIVE YEARS SUSPENDED; COUNTS IV AND V, FONDLING, AND SENTENCED TO TEN YEARS FOR EACH COUNT, TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT III; COUNT VI, SEXUAL BATTERY, AND SENTENCED TO TWENTY YEARS, WITH FIVE YEARS SUSPENDED, TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT III; AND COUNT VII, SEXUAL BATTERY, AND SENTENCED TO TWENTY YEARS, WITH FIVE YEARS SUSPENDED, TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT III, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FOLLOWED BY FIVE YEARS OF REPORTING POSTRELEASE |

DISPOSITION:
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND CARLTON, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     A DeSoto County jury found Frank Friday guilty of three counts of sexual battery and two counts of fondling of Betty,[1] who, at the time of the crime, was his twelve-year-old stepdaughter.  The trial judge sentenced Friday to twenty years with five years suspended for Count III (sexual battery), ten years for Count IV (fondling), ten years for Count V (fondling), twenty years with five suspended for Count VI (sexual battery), and twenty years with five suspended for Count VII (sexual battery) in the custody of the Mississippi Department of Corrections, followed by five years of reporting postrelease supervision and five years of nonreporting postrelease supervision.  Counts IV, V, and VI were ordered to be served concurrently to the sentence in Count III, with Count VII to be served consecutively to the sentence in Count III.  Friday now appeals, arguing the trial court erred in refusing to grant funds for an independent DNA examination, and in failing to conduct a tender-years hearing.  Finding only harmless error, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2.     On January 9, 2014, Detective Tim Stark of the Horn Lake Police Department

---

[1] The names of the victim and the victim's family have been changed to protect her identity.

received a telephone call from the school resource officer at Horn Lake Middle School. Detective Stark learned from a Mississippi Department of Human Services (DHS) social worker at the school that two students, then-fourteen-year-old Abby and twelve-year-old Betty, had reported being sexually abused by their stepfather, Friday. Detective Stark arranged for Betty to go to the Memphis Rape Crisis Center for a sexual-assault examination; he also interviewed the children's mother, Karen, about the allegations.

¶3.     Betty's sexual-assault kit was logged and stored at the police station until it could be delivered to the crime lab. A search warrant was obtained for Friday's DNA and compared to the vaginal swabs from Betty's sexual-assault kit. The kit contained seminal fluid found in Betty's vagina, which matched Friday's cheek-swab DNA by a "statistic of one in greater than ten billion." Both Abby and Betty had forensic interviews at Healing Hearts Child Advocacy Center in Southaven, Mississippi, which Detective Stark observed. Ultimately, Friday was arrested, and a seven-count indictment ensued.[2]

¶4.     At trial, both Abby and Betty testified. Abby, the older sister, testified that Friday moved in with the family after he and her mother had been dating several months. Abby testified that Friday "messed with" her younger sister, Betty. Once Abby had sneaked into Karen and Friday's bedroom to "pop out and scare" him. She hid behind the bed with the lights off. Abby then saw Betty go into the bedroom with Friday and saw Betty's clothes drop to the floor. Friday and Betty got into bed, and Abby heard the bed squeaking.

¶5.     Eventually, Abby got "fed up with it" and "couldn't take any more"; so, one morning

---

[2] Counts I and II were charges for the fondling of Abby. Ultimately, the jury acquitted Friday of Count I, and Count II was dismissed for insufficient evidence.

before school she told her mother that Friday was "touching" her and Betty. Her mother looked "really sad and hurt." Abby testified the abuse had been going on for perhaps a couple of years; the last time was a few days before she told her mother. Betty was not in the room when Abby told their mother. At school that day, Abby was noticeably upset; so the school counselor asked what was wrong. Abby told her of Friday's sexual abuse, which triggered a DHS investigation and Detective Stark's involvement.

¶6. Betty also testified at trial. She explained that her mother worked nights at a casino; so she and Abby were often alone with Friday. Betty testified that the night before Abby told their mother, Friday had instructed Betty to take off her clothes and lie on the bed. As Betty put it, Friday touched her in places that would normally be covered with a bikini. He then put "his front" "in [her] front." Betty stated she was thirteen at the time, and she felt "really bad" and guilty after it happened.

¶7. Betty relayed to the jury another incident where "just about the same thing that happened in the bedroom" happened on the couch when she and Friday were watching television. Friday had put Betty's hand on his "private part." Friday had also kissed Betty, put his private part in her mouth, and put his mouth on her private area.

¶8. Abby admitted to recanting her allegations to several people, including her mother, Detective Stark, and the DHS social worker. However, she explained that she recanted because her mother was so upset. Abby told her mother that she heard voices in her head that told her to accuse Friday of sexual abuse. As a result, Abby was admitted to an inpatient behavioral health center for treatment. On redirect, however, Abby explained that she did

4

not really hear these voices. Abby also claimed that Friday had touched her private areas.

¶9. Betty also admitted to recanting her allegations because her mother was hurt by the accusations. However, she also explained that her testimony about Friday's sexual abuse was true, as were her initial reports to law enforcement, DHS, and the rape crisis center.

¶10. Karen, the girls' mother, testified that Abby told her one morning that Friday had been "touching her and her sister while [she] was at work." Initially, she did not believe her children. When Karen confronted Friday, he stated that her daughter must have "ejaculated him and inserted herself with his semen."

¶11. Friday testified in his own defense. He denied ever touching Betty or Abby inappropriately. He did not know what happened, but admitted the State "possibly could" have his DNA because he has always slept naked, and has nocturnal emissions; so "it was available."

## ANALYSIS

### 1. Independent DNA Examination

¶12. Friday argues that the trial court deprived him of a fair trial by refusing to grant funding to obtain his own DNA examination and/or expert, who he claims would provide independent verification of the validity of the Mississippi Crime Laboratory's DNA test results.

¶13. "Whether an indigent defendant must be provided expert funding is decided on a case-by-case basis," and reviewed for an abuse of discretion. *Barksdale v. State*, 176 So. 3d 108, 112 (¶18) (Miss. Ct. App. 2015) (citing *Lowe v. State*, 127 So. 3d 178, 183 (¶20)

(Miss. 2013)).  The State "must take steps to assure that the [indigent] defendant has a fair opportunity to present his defense[, and a] trial court must provide expert assistance to an indigent defendant when denial of such assistance would render the trial fundamentally unfair.  This does not mean that an expert must be supplied any time an indigent defendant requests one."  *Id.*  (internal citations and quotation marks omitted).  "[A] defendant must demonstrate a substantial need in order to justify the trial court expending public funds for an expert to assist the defense."  *Lowe*, 127 So. 3d at 181 (¶14) (quoting *Richardson v. State*, 767 So. 2d 195, 198 (¶10) (Miss. 2000)).  Factors a reviewing court should consider when determining whether a defendant was denied a fair trial as a result of the trial court's denial of funds for an expert include:  "whether and to what degree the defendant had access to the State's experts, whether the defendant had the opportunity to cross-examine those experts, and lack of prejudice or incompetence of the State's experts."  *Townsend v. State*, 847 So. 2d 825, 829 (¶13) (Miss. 2003) (citing *Fisher v. City of Eupora*, 587 So. 2d 878, 883 (Miss. 1991)).

¶14.    In a pretrial motion, the defense requested funds for independent testing of the DNA evidence, stating evidence remained that could still be tested and "verification of this DNA evidence [was] essential for the Defendant to prepare his defense and to discover potentially exculpatory evidence."  At the motions hearing, the only reason given for Friday's request was his insistence he was innocent.  The State responded that it had no argument for or against it, explaining that testimony from both victims would be elicited at trial, as well as the DNA evidence, which was "the strongest, most damning piece of evidence against this

6

defendant."[3] The trial judge denied the motion over a week later, after researching the issue.

¶15. In an analogous case, *Ellis v. State*, 989 So. 2d 958, 964 (¶15) (Miss. Ct. App. 2008), the trial court granted the defendant's motion to conduct an independent DNA test for his trial for sexual battery and statutory rape, but denied his request for funds to hire an independent DNA expert. We affirmed, finding the court did not abuse its discretion in denying the request for funds, since the defendant could not prove that funding his own expert "would have significantly aided his defense." *Id.* at 965 (¶¶19-20). Likewise, Friday has failed to present any specific reason given why this request would have significantly aided his defense.

¶16. Applying the factors above, at trial the defense attorney had the opportunity to cross-examine Leslia Davis of the Mississippi Crime Laboratory, who was the State's DNA expert. None of her testimony called into question the accuracy of the DNA test results, practices, or procedures. Friday's counsel did not complain of her incompetence or prejudice, and there were no accusations of any problem with the crime laboratory's testing or any other reason to question its validity. Finally, while the DNA evidence against Friday was certainly "damning," there was other strong evidence of guilt as well, such as Betty's forensic interview, which was seen by the jury, and the trial testimony of Betty, Abby, Karen, Detective Stark, two school counselors, and the rape-crisis-center nurse. Accordingly, we cannot say that the trial court abused its discretion.

---

[3] The sexual-assault kit performed on Betty found seminal fluid in her vaginal swab. The Mississippi Crime Laboratory concluded that the genetic profile taken from Friday's cheek swab could not be excluded from the DNA profile taken from the sexual-assault kit – the probability of it not matching being one in greater than ten billion.

## 2. Tender-Years-Hearsay-Exception Hearing

¶17. Friday argues that the trial court erred in failing to conduct a tender-years hearing under Mississippi Rule of Evidence 803(25), thereby allowing inadmissible hearsay testimony from Karen and Brittaney Baskin, the forensic interviewer, to be heard by the jury about Abby's and Betty's statements of the sexual abuse.

¶18. The standard of review for the admission of hearsay evidence is abuse of discretion. *White v. State*, 48 So. 3d 454, 456 (¶9) (Miss. 2010). Rule 803(25), known as the tender-years hearsay exception, states:

> A statement by a child of tender years describing any act of sexual contact with or by another is admissible if: (A) the court – after a hearing outside the jury's presence – determines that the statement's time, content, and circumstances provide substantial indicia of reliability; and (B) the child either: (i) testifies; or (ii) is unavailable as a witness, and other evidence corroborates the act.

To determine whether a young declarant's out-of-court statement is admissible under the tender-years exception, "the court must determine (1) that the declarant is a child of tender years and (2) that the time, content, and circumstances of the statement provide substantial indicia of reliability." *Veasley v. State*, 735 So. 2d 432, 436 (¶14) (Miss. 1999). "[T]here is a rebuttable presumption that a child under the age of twelve is of tender years." *Id.* at (¶16). However, when the child declarant is twelve years old or older, the presumption does not apply, and "the trial court must make a case-by-case determination as to whether the [declarant] is of tender years . . . on the record and based on a factual finding as to the [declarant's] mental and emotional age." *Id.* at 437 (¶16). "The child's age at the time of the statement, rather than her age at trial, is the relevant age used to determine if the tender

[-]years exception applies." *Klauk v. State*, 940 So. 2d 954, 956 (¶6) (Miss. Ct. App. 2006) (citation omitted).

¶19.　Friday filed a pretrial motion in limine to exclude possible hearsay testimony of certain witnesses or, alternatively, for a tender-years hearing, if the State sought to admit such testimony. Yet Baskin was not included in this list of witnesses. At the pretrial motions hearing, the trial judge stated that he would reserve ruling until when the witness was called, the testimony was elicited, and a contemporaneous objection was made. However, during the testimony of Karen and Baskin, the defense did not make any objection regarding any possible hearsay testimony, nor did the defense request a tender-years hearing outside of the jury's presence.

¶20.　At the time of the statements and interviews at issue, Abby was fourteen years old and Betty was twelve years old; so the tender-years presumption would not apply, and the trial court should have made a finding on the record as to whether the child was of tender years, but did not. We find this failure error, but harmless.

¶21.　As the State points out, *Nunnery v. State*, 126 So. 3d 105 (Miss. Ct. App. 2013), is instructive here. In *Nunnery*, this Court found error when the trial court did not conduct a tender-years hearing, even though the defense failed to raise the issue at the pretrial motions hearing and failed to object during the pertinent testimony. *Id.* at 109 (¶12). However, while it was error for the trial court not to determine if the victim of sexual abuse was of tender years and if the tender-years exception applied, the error did not warrant reversal. *Id.* at (¶13). The error was deemed harmless because "the weight of the evidence against [the

defendant was] sufficient to outweigh the harm done by allowing admission of the evidence." *Id.* (quoting *Klauk*, 940 So. 2d at 957 (¶7)).

¶22. Here, the harmless-error standard applies as well. At trial, Betty testified to her sexual abuse in detail – both fondling and sexual battery. Further, Abby testified that she saw Friday and Betty in his bedroom – Betty's clothes fell to the ground, and Abby heard the bed squeaking. Moreover, there was no objection to the admission of Betty's forensic interview, and most damning, there was DNA evidence of Friday's sperm in Betty's vagina. The weight of the evidence of guilt outweighed any harm done by allowing admission of hearsay statements by Karen and Baskin. Accordingly, the admission of the statements without a tender-years hearing is harmless error.

¶23. **THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF COUNT III, SEXUAL BATTERY, AND SENTENCE OF TWENTY YEARS, WITH FIVE YEARS SUSPENDED; COUNTS IV AND V, FONDLING, AND SENTENCE OF TEN YEARS FOR EACH COUNT, TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT III; COUNT VI, SEXUAL BATTERY, AND SENTENCE OF TWENTY YEARS, WITH FIVE YEARS SUSPENDED, TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT III; AND COUNT VII, SEXUAL BATTERY, AND SENTENCE OF TWENTY YEARS, WITH FIVE YEARS SUSPENDED, TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT III, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FOLLOWED BY FIVE YEARS OF REPORTING POSTRELEASE SUPERVISION AND FIVE YEARS OF NONREPORTING POSTRELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**