# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-KA-00312-SCT

*MONTAE BLANCHARD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/19/2010 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: GEORGE T. HOLMES |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/10/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE WALLER, C.J., DICKINSON, P.J., AND KITCHENS, J.

### KITCHENS, JUSTICE, FOR THE COURT:

¶1.     Following a jury trial from which he was absent, Montae Blanchard was convicted of armed robbery as defined by Mississippi Code Section 97-3-79 (Rev. 2006). The trial court sentenced Blanchard to fifty years' imprisonment and ordered him to pay court costs, fees, restitution, and a fine, totaling $15,822.50. Finding no reversible error, we affirm the conviction and sentence.

**Facts**

¶2.     On January 7, 2008, just before 5:00 p.m., Dale Pierce, the owner of Terrific Tax in Aberdeen, Mississippi, noticed two young people, a male and a female, loitering outside the Terrific Tax building.  Pierce asked whether they needed assistance, and was told that their car had been stolen.  Pierce advised the two youths to contact the police, but they replied that they did not want to inform law officers because their cousin probably had taken the car.  Pierce left, then returned to the store at 5:20 p.m., when he was told by David Mink, a Terrific Tax employee, that the business had been robbed.

¶3.     According to Mink, the young female had entered the store at 4:50 p.m.  Mink said that he initially had thought she was a boy and later described her to police as a short, black teenager with short hair and tattoos.  Mink said that the girl asked him for his telephone number, but he declined to give her his number because he was married.

¶4.     Shortly thereafter, her male companion entered the Terrific Tax establishment.  Mink described him as a tall, black male, wearing a stocking cap over his dreadlocks.  When the man entered the store, the girl asked Mink for some candy that she noticed behind the business counter.  When Mink brought the candy to her, the man removed what appeared to be a handgun from the waistband of his shorts and pointed it at Mink's face.  The man then handed the gun to the girl, and told Mink to go sit in a chair by the front door while she continued to point the gun at Mink.  Mink complied and sat down while the man went behind the counter and stole a bag containing roughly $5,000 in cash.

¶5.     Before exiting the establishment, the man instructed Mink to come to the back of the business counter.  There, the man told Mink not to use the telephone, and demanded that

Mink give him his car keys and mobile telephone. Mink responded that he did not have his keys or his mobile telephone. The man then told Mink he was "Chris from Amory" and "that he [Mink] would remember him." The two robbers then exited the business, the man carrying the bag of cash, and the young woman carrying the gun. As they left, Mink's mother entered the building, and Mink yelled for her to call the police.

¶6.    Police arrived soon after the robbery was reported, and Investigator Quinell Shumpert was assigned to the case. Shumpert testified that, during the course of his investigation, he developed a suspicion that the girl involved in the robbery was Mary Minor.[1] Shumpert identified Mary as a suspect from the description Mink gave of a short black teenager with tattoos, brown skin, and masculine features. Shumpert's matching identification came from personal knowledge of Mary in his capacity as an investigator in previous matters.

¶7.    Shumpert eventually located Mary at her cousin's home. Upon arrest, Mary told Shumpert that she had hidden the gun used in the robbery under a mattress in her cousin's bedroom. The police located a BB pistol under the mattress and confiscated it. Mink testified at trial that this BB pistol looked like the gun that was used in the robbery.

¶8.    During further questioning, Mary also told Shumpert that her accomplice was her cousin, Montae Blanchard. Shumpert called Blanchard and asked him to come to the Aberdeen police station to talk about the robbery.

---

[1]Because of her youth, the pseudonym *Mary Minor* is used in place of the accomplice's real name. At the time of the robbery, Mary was sixteen years old and was adjudicated delinquent in the youth court for her role in the robbery.

¶9.     After Mary had disclosed the name of her accomplice, both men from Terrific Tax identified Blanchard from a photo array. When Blanchard arrived at the police station, he was taken to an interrogation room with a two-way mirror. Shumpert testified that Pierce and Mink had observed Blanchard from the other side of the mirror, and that Pierce had again positively identified Blanchard as the man he had seen loitering outside his store. Shumpert could not recall whether Mink also made a second identification, but Mink testified that he had identified Blanchard as the robber from behind the mirror.

¶10.    Although Mink had described the man who robbed Terrific Tax as having braids in his hair, Blanchard arrived at the police station with a shaven head. While being questioned, Blanchard contended that he had been in Tupelo at a hospital with his girlfriend and another female friend during the time of the robbery. Shumpert then contacted the hospital, and the hospital's security guard stated he had reviewed the hospital's surveillance tapes and had not seen Blanchard but had seen the two women he claimed to have been with.

¶11.    Prior to trial, Blanchard was assigned a public defender, Luanne S. Thompson. When the trial began, Blanchard was not present. Neither the judge, prosecutor, nor Thompson mentioned Blanchard's absence until the first witness had testified. During a recess, with the jury out, the judge noted for the record that the defendant was not present. Lawyer Thompson told the court that she had been in contact with Blanchard numerous times, and that he was well aware of his trial date. The trial proceeded to conclusion in Blanchard's absence.

¶12.    Mary Minor, the juvenile accomplice, testified against her cousin, corroborating Pierce and Mink's version of events and confirming their accounts of Blanchard's activities

4

in connection with the crime. She said that she had not wanted to rob the store, but that Blanchard had threatened to harm her if she did not help him "hit a lick." Although some of the details of her story were contradictory, she was emphatic that Blanchard was the person who had robbed Terrific Tax. At trial, Mary identified Blanchard from a photograph. Pierce and Mink also were shown the photograph at trial, and both testified that Blanchard was the man who had robbed the store.

¶13. Following a day's testimony, the jury found Blanchard guilty of armed robbery. A sentencing hearing was held the next day, with Blanchard again absent. The trial judge sentenced Blanchard to fifty years' imprisonment.

## Issues

¶14. Blanchard raises three issues on appeal: (1) whether the trial court erred by trying him in absentia; (2) whether he had received ineffective assistance of counsel; and (3) whether the verdict was against the weight of the evidence.

## Discussion

### (1) Trial In Absentia

¶15. Blanchard was released on bail pending his trial. After the first witness had testified, the trial judge briefly discussed Blanchard's absence outside the presence of the jury. Blanchard's attorney, Thompson, told the court that Blanchard was aware of his trial date and time, and that Blanchard had told Thompson the night before the trial that he would be present. Thompson did not request a continuance or otherwise object to the trial's proceeding in her client's absence.

5

¶16. On appeal, Blanchard asks that this Court review the issue as plain error. When a defendant fails to make a proper objection at trial, and thus fails to preserve the issue for appellate review, we will reverse if the error involved a fundamental and/or substantive right and resulted in a "manifest miscarriage of justice" or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Brown v. State*, 995 So. 2d 698, 703 (Miss. 2008).

¶17. An accused's right to be present at every stage of his trial is guaranteed by the Sixth Amendment to the United States Constitution and Article 3, Section 26, of the Mississippi Constitution. *See Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); *Corbin v. State*, 99 Miss. 486, 55 So. 43, 44 (1911). This right may be waived based on a defendant's "willful, voluntary, and deliberate absence from trial." *Jay v. State*, 25 So. 3d 257, 264 (Miss. 2010). Mississippi Code Section 99-17-9 (Rev. 2007) provides,

> In criminal cases the presence of the prisoner may be waived (a) if the defendant is in custody and consenting thereto, or (b) *is on recognizance or bail*, has been arrested and escaped, or has been notified in writing by the proper officer of the pendency of the indictment against him, *and* resisted or fled, or refused to be taken, or *is in any way in default for nonappearance*, the trial may progress at the discretion of the court, and judgment made final and sentence awarded as though such defendant were personally present in court.

(Emphasis added.) Thus, a trial in absentia may be had where the accused "is on recognizance or bail . . . and . . . is in any way in default for nonappearance . . . ." Miss. Code Ann. § 99-17-9.

¶18. To support his argument, Blanchard cites *Jay v. State*, 25 So. 3d 257, and *Ali v. State*, 928 So. 2d 237 (Miss. Ct. App. 2006). However, in both cases, there was evidence that the defendant's absence was not deliberate. In *Jay*, 25 So. 3d at 264, there was evidence that the

6

defendant was not mentally competent, and therefore, "[w]hether or not Jay's absence at trial was a result of willful, voluntary, and deliberate actions turned on whether or not he was mentally competent at the time of trial." In *Ali*, 928 So. 2d at 240, the defendant's testimony at a post-trial hearing on his motion for a new trial established that he did not understand when his trial was being held. The defendant in *Ali* was a Somalian citizen with limited knowledge of the English language. *Id.*

¶19.    These cases clearly are distinguishable from the one before us in that there was evidence in each that the defendant's actions were not deliberate. In the present case, Blanchard's attorney made it clear to the trial court that he was aware of his trial date. Without evidence that Blanchard's absence was not willful, voluntary, and deliberate, the trial judge did not commit plain error by conducting the trial in absentia.

### *(2) Ineffective Assistance of Counsel*

¶20.    Blanchard next argues that his trial counsel was ineffective for failing to request a continuance based on his absence and for failing to object to certain hearsay testimony, specifically, Shumpert's testimony regarding his conversation with the hospital security guard. This Court has held:

> Ordinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings. This is because during direct appeals the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately. *Wilcher v. State*, 863 So. 2d 776, 825 (Miss. 2003). In such a case, the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue through a petition for post-conviction relief. *Read v. State,* 430 So. 2d 832, 837 (Miss. 1983).

7

However, this Court may address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record. M.R.A.P. 22; *see also* **Havard v. State***,* 928 So. 2d 771, 786 (Miss. 2006).

*Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008). Although, in his brief, Blanchard stipulates that the record on direct appeal is adequate, we find that Blanchard's ineffective assistance of counsel claims are best reserved for a potential petition for post-conviction relief. *See* **Read v. State**, 430 So. 2d 832, 841 (Miss. 1983) (holding that we may review an ineffective assistance of counsel claim where "the parties stipulate that the record is adequate *and* the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc. are not needed.") (emphasis added).

### (3) Weight of the Evidence

¶21.    Lastly, Blanchard argues that the verdict was against the weight of the evidence.

We will only disturb a jury verdict when "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." **Bush v. State**, 895 So. 2d 836, 844 (citing **Herring v. State***,* 691 So. 2d 948, 957 (Miss. 1997)). This Court acts as a "thirteenth juror" and views the evidence in the light most favorable to the verdict. **Bush**, 895 So. 2d at 843 (citing **Herring**, 691 So. 2d at 957). A decision to reverse and order a new trial, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." **Bush**, 895 So. 2d at 844 (quoting **McQueen v. State**, 423 So. 2d 800, 803 (Miss.1982)).

*Harris v. State*, 970 So. 2d 151, 156 (Miss. 2007).

¶22.    In his brief argument on this purported point of error, Blanchard avers that the victims' descriptions of the robber did not match his physical appearance, that Mary's testimony was "unreasonable and unreliable," and that there was no physical evidence to tie Blanchard to the crime.

8

¶23. The only difference between the victims' physical descriptions of the robber and Blanchard was that the robber had dreadlocks or braids, while Blanchard's head was shaven. However, Mary Minor testified that, at the time of the robbery, Blanchard had dreadlocks. Moreover, Officer Shumpert testified that he had seen Blanchard roughly a week before the robbery and knew that Blanchard had longer hair which he kept in braids. Both Shumpert and Mary deduced that Blanchard had shaved his head between the robbery and his arrival at the police station.

¶24. Regarding Mary's testimony, Blanchard does not explain to this Court how her testimony was "unreasonable or unreliable." While there were some inconsistencies in her testimony, it was the jury's duty, not ours, to gauge the witness's credibility. *Moore v. State*, 933 So. 2d 910, 922 (Miss. 2006) (citing *Johnson v State*, 904 So. 2d 162, 167 (Miss. 2005); *Davis v. State*, 568 So. 2d 277, 281 (Miss. 1990)).

¶25. Finally, a limited amount of physical evidence, in itself, does not mean that a guilty verdict was against the weight of the evidence. *See Moore v. State*, 933 So. 2d 910, 922-23 (Miss. 2006) (burglary conviction not against the weight of the evidence where there was no physical evidence tying defendant to crime). Thus, this issue is without merit.

### Conclusion

¶26. The trial court did not commit plain error by trying Blanchard in absentia when there was no evidence to indicate that his absence was involuntary. As for his ineffective assistance of counsel claims, we find that these matters are best preserved for post-conviction proceedings. Finally, we find no merit in Blanchard's arguments regarding the weight of the evidence. For these reasons, we affirm Blanchard's conviction and sentence.

9

¶27.  **CONVICTION OF ARMED ROBBERY AND SENTENCE OF FIFTY (50) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, CHANDLER AND PIERCE JJ., CONCUR.  KING, J., NOT PARTICIPATING.**