ON WRIT OF CERTIORARI

DICKINSON, Presiding Justice,
for the Court:

We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense.

[1]

¶ 1. The State indicted John Bartholomew Lowe on five counts of exploitation of a child, alleging that he had downloaded sexually explicit images and videos of children via the internet to his laptop computer. Because the State had no direct evidence that Lowe had downloaded the images, its case depended on the opinions of its expert witness.
¶ 2. Lowe contended that several others had access to his computer, and that someone else had downloaded the material. He requested funds to hire an expert to assist him in refuting the opinions of the State’s expert. Because the trial court denied Lowe’s request, thereby depriving him of the opportunity to prepare an adequate defense, we reverse and remand for a new trial.
FACTS AND PROCEDURAL HISTORY
¶ 8. After law enforcement authorities discovered sexually explicit images of children on Lowe’s computer, the grand jury indicted him on five counts of exploitation of a child. Each count alleged that on June 6, 2009, Lowe downloaded sexually explicit images or videos of children under the age of eighteen via the internet to his laptop computer. Thereafter, the trial court entered an arraignment order, determining that Lowe was indigent and appointing him counsel.
¶ 4. During the law-enforcement investigation concerning the allegations against Lowe, Tom Thomas, an expert in computer forensics, performed a forensic examination of Lowe’s laptop for the State. Prior to trial, Lowe filed several motions requesting funding for an expert of his own to perform a forensic computer examination and prepare a defense to Thomas’s findings.
¶ 5. Lowe first raised his need for an expert in a motion for continuance filed March 18, 2010. Therein, Lowe argued that he needed additional time to prepare his defense so that he could obtain an expert to examine the computer’s hard drive. That same day, Lowe filed a motion for funds to hire a computer expert. In that motion, Lowe argued that, because the State’s expert had examined his hard drive and allegedly had found illegal material, he needed an expert to refute those allegations. He informed the court that he *180 was an indigent defendant and would be unable to afford to pay his own expert.
¶ 6. Lowe informed the court that an expert would be necessary to “examine the hard drive which is alleged to have come from his computer to determine who could have downloaded the pictures and video clips onto his computer” and “to determine when the material was downloaded and under whose user name and password the alleged child pornography was accessed.” Lowe averred that his expert was necessary “to properly meet the charges against him,” and that granting a continuance and providing funds to obtain an expert would cause no harm to the State. Finally, Lowe presented an estimate of $1,500 as the cost to obtain the necessary expert. Thereafter, at a motion hearing before the trial court, the State agreed to a continuance so Lowe could attempt to obtain funds for an expert and review discovery, but the trial court failed to rule on the motion for funds.
¶ 7. Then, on May 27, 2010, Lowe filed a second motion for continuance. In this motion, Lowe asserted that, following his previous motion for funds, the trial court had instructed Lowe’s counsel to speak with the State’s expert. Lowe informed the court that the State’s expert had refused to discuss the specifics of his forensic examination and had agreed to meet with Lowe’s counsel less than two weeks before trial. Lowe averred that, without an expert of his own, counsel would lack the requisite knowledge to question the State’s expert properly. Lowe also reasserted his prior argument that he required an expert “to determine the presence or absence of other user names and passwords” and “the time the alleged pornography was added to the computer.” Finally, Lowe argued that a continuance was “absolutely necessary” so that he could obtain an expert and give that expert the requisite time to analyze the hard drive.
¶ 8. On June 3, 2010, the trial court denied Lowe’s motion for expert funds. On June 8, 2010, the trial granted Lowe’s continuance following a hearing on that motion. During that hearing, the trial judge instructed Lowe’s counsel that he needed to consult with the State’s expert before the court would burden the State with funding a defense expert. Lowe’s counsel responded that he could not adequately prepare to question the State’s expert without the knowledge of a defense expert. On November 9, 2010, the trial court entered a second order denying expert funds.
¶ 9. On April 11, 2011, the case proceeded to trial. Marie Taylor testified that she and her two daughters had resided with Lowe for some time. She testified that they each used Lowe’s computer under various user names and passwords. Further, she explained that Lowe never refused anyone access to his computer and that, on at least one occasion during a party, numerous visitors had access to the computer. Finally, she testified that, to her knowledge, Lowe had never downloaded pornography.
¶ 10. Lowe’s employer testified that on June 6, 2010, Lowe worked alone at a Masonite Corporation plant. The investigating officer testified that he and the State’s computer forensics expert drove around near that plant and found several unprotected internet networks that Lowe could have used to download the content.
¶ 11. Finally, Tom Thomas, the State’s expert, testified that all five of the files in question were saved under Lowe’s user name and password. He also testified that it appeared the files were downloaded through unprotected networks, including an unprotected network at a McDonald’s near the Masonite plant. Finally, Thomas *181 opined that the “digital fingerprint” pointed to Lowe as the individual who had downloaded the files. Thomas did acknowledge, however, that someone could have placed the content on Lowe’s computer from a different computer and that someone else could have downloaded the content using Lowe’s user name and password. But Thomas testified that, in his opinion, neither of those was likely here.
¶ 12. The jury convicted Lowe of all five counts. The circuit court found Lowe to be a habitual offender and sentenced him to life imprisonment in the custody of the Mississippi Department of Corrections. Lowe appealed, arguing that the trial court had erred by denying the requested expert funds, that it had erred by denying his request to voir dire the State’s expert in front of the jury, and that the verdict was against the overwhelming weight of the evidence.[2] The Mississippi Court of Appeals affirmed and we granted certiora-ri.
ANALYSIS
¶ 13. The United States Supreme Court “has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense.”[3] We have echoed this principle, holding that a trial court must provide expert assistance to an indigent defendant when denial of such assistance would render the trial fundamentally unfair.[4] Here, the circuit court deprived Lowe of a fundamentally fair trial by denying him the assistance of a computer forensics expert when the State relied exclusively on its own expert to identify Lowe as the perpetrator of the offenses charged. Accordingly, we reverse and remand for a new trial.
¶ 14. We will not hesitate to reverse a trial court’s denial of expert assistance to an indigent defendant when the lack of expert assistance denied the defendant due process such that the trial was rendered fundamentally unfair.[5] The determination of whether an indigent defendant must be provided expert funding is made on a case-by-case basis,[6] and “[a] defendant must demonstrate a substantial need in order to justify the trial court expending public funds for an expert to assist the defense.”[7]
¶ 15. The Court of Appeals concluded that Lowe had failed to make the necessary substantial showing of need by failing “to articulate an issue, an element, or any desired testimony requiring independent expert assistance.”[8] Instead, the Court of Appeals found that Lowe had presented only “undeveloped assertions” and that the trial court did not deprive Lowe of a fundamentally fair trial because Lowe had the opportunity to interview the State’s expert.[9]
¶ 16. In Ake v. Oklahoma, the United States Supreme Court addressed an indi *182 gent defendant’s claim for funds to obtain an examination by a psychiatrist in order to prepare a defense based on the defendant’s mental condition.[10] The Court identified the source of the right at stake, stating:
This elementary principle, grounded in significant part on the Fourteenth Amendment’s due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.[11]
Then, after discussing its decisions entitling indigent defendants to copies of trial transcripts,[12] waiver of appellate filing fees,[13] counsel,[14] and effective assistance thereof,[15] the Court stated:
Meaningful access to justice has been the consistent theme of these cases. We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense.[16]
The Court also stated “fundamental fairness entitles indigent defendants to ‘an adequate opportunity to present their claims fairly within the adversary system’ ”[17] and that courts implement this principle by identifying the tools of an adequate defense and providing them to indigent defendants.[18]
¶ 17. The Court then proceeded to determine whether the requested psychiatrist was a basic tool of an adequate defense. The Court identified three relevant factors for that determination:
The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.[19]
¶ 18. Applying those factors, the Ake Court found an individual’s interest in accurate criminal proceedings “uniquely compelling,” and weighing heavily in the analysis,[20] and that the State’s only inter *183 est against funding a defendant’s expert is the insubstantial interest of avoiding the financial cost.[21] The Court pointed out that the State’s interest in prevailing at trial is tempered by the fact that the State has a greater interest in seeing fair and accurate resolution of criminal cases.[22]
¶ 19. Finally, the Ake Court determined that the probable value of the requested psychiatrist was great because the defendant’s psychiatric condition was relevant to his criminal culpability, and the defendant’s psychiatrist could have gathered facts and drawn probable conclusions about the defendant’s condition. The psychiatrist also would have known “the probative questions to ask of the opposing party’s psychiatrists and how to interpret their answers.”[23]
¶ 20. Here, the Court of Appeals correctly noted that this Court applies Ake on a case-by-case basis — reviewing the trial judge’s determination for an abuse of discretion — rather than as a bright-line rule entitling indigent defendants to expert assistance on demand[24] But to conclude that the facts of this case do not give rise to a substantial need for the requested expert would be contrary to the dictates of Ake.
¶ 21. Here, the State could not have convicted Lowe simply by showing the sexually explicit images and videos were on his computer. It had the burden to prove beyond a reasonable doubt that Lowe, himself, downloaded them. The State presented its case without the testimony of any lay witness purporting to have knowledge that Lowe downloaded the files in question. Instead, the State relied solely on the opinions of its expert witness to establish that the files existed on Lowe’s laptop and that Lowe, rather than another individual using his laptop, downloaded the images from the internet.
¶ 22. Anticipating this reliance on expert testimony by the State, Lowe’s counsel repeatedly explained to the trial court its specific needs for an independent expert in computer forensics. Lowe’s counsel argued that he needed an expert to examine the computer’s hard drive and to refute the State expert’s allegations that the hard drive contained pornographic images of children. He further argued that an expert was necessary to determine who downloaded the content and under what user name and password.
¶ 28. Finally, as the United States Supreme Court found vitally important in Ake, counsel argued that Lowe needed an expert to provide him with the requisite information to adequately question the State’s expert. Ironically, both the trial court and the Court of Appeals seem to opine that Lowe’s counsel should have been able to articulate problems with the State expert’s opinion by questioning that expert pretrial, but before obtaining an expert to provide the necessary knowledge to know what questions to ask. This view presupposes that the State’s expert would have assisted Lowe in deciding whether his opinions could be successfully attacked by another expert. Stated another way, had Lowe’s counsel asked the State’s expert: “Sir, do you think that another expert appointed by the court to assist Mr. Lowe could successfully attack some of your opinion?” we think the answer— which probably would have been “no”— would have been unhelpful in our analysis.
*184 ¶ 24. Considering each of the reasons articulated by trial counsel, the probable value of an independent defense expert must weigh heavily in favor of a substantial need for a state-funded independent expert. And, as in Ake, both the State and the defendant have interest in an accurate resolution of this criminal case. The State’s interest in avoiding the cost of providing an independent expert cannot overcome those needs. Where, as here, the State relies on expert testimony alone to connect the defendant to the offense charged, an independent defense expert is part of the “raw materials integral to building an effective defense,” and the trial judge deprives an indigent defendant of a fundamentally fair trial by refusing him funds to procure such an expert.
¶ 25. In attempting to demonstrate why it believes Lowe did not need an expert, the dissent refers to “the overwhelming evidence presented against Lowe.” But the “overwhelming” evidence listed by the dissent primarily consists of opinions provided by the State’s expert. We find this argument unpersuasive.
CONCLUSION
¶ 26. Because the trial court’s denial of Lowe’s requested expert funds denied him the opportunity to prepare an adequate defense, the decision rendered Lowe’s trial fundamentally unfair. Accordingly, we reverse the judgment of the Court of Appeals, and we also reverse Lowe’s conviction in the trial court on five counts of exploitation of a child. We remand this case to the Jones County Circuit Court for a new trial. In preparation for that trial, the trial court shall provide Lowe funds to obtain an expert in computer forensics.
¶ 27. REVERSED AND REMANDED.
WALLER, C.J., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J.

. Ake v. Oklahoma, 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

. Lowe v. State, - So.3d -, - (Miss.Ct. App. Sept. 18, 2012).

. Ake, 470 U.S. at 76, 105 S.Ct. 1087.

. Fisher v. City of Eupora, 587 So.2d 878, 883 (Miss. 1991) (quoting Johnson v. State, 529 So.2d 577, 590 (Miss. 1988)).

. Fisher, 587 So.2d at 883.

. Richardson v. State, 767 So.2d 195, 198 (Miss.2000) (citing Coleman v. State, 697 So.2d 777, 782 (Miss. 1997) (citing Davis v. State, 374 So.2d 1293, 1297 (Miss. 1979))).

. Richardson, 767 So.2d at 198 (citing Holland v. State, 705 So.2d 307, 334 (Miss.1997)).

. Lowe, - So.3d at -.

. Id.

. Ake, 470 U.S. at 70, 105 S.Ct. 1087.

. Id. at 76, 105 S.Ct. 1087.

. Id. (citing Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956)).

. Ake, 470 U.S. at 76, 105 S.Ct. 1087 (citing Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959)).

. Ake, 470 U.S. at 76, 105 S.Ct. 1087 (citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)).

. Ake, 470 U.S. at 76, 105 S.Ct. 1087 (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

.Ake, 470 U.S. at 77, 105 S.Ct. 1087.

. Ake, 470 U.S. at 77, 105 S.Ct. 1087 (quoting Ross v. Moffitt, 417 U.S. 600, 612, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974)).

. Ake, 470 U.S. at 77, 105 S.Ct. 1087 (citing Britt v. North Carolina, 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971)).

. Ake, 470 U.S. at 77, 105 S.Ct. 1087 (citing Little v. Streater, 452 U.S. 1, 6, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981)).

. Ake, 470 U.S. at 78, 105 S.Ct. 1087.

. Id. at 79, 105 S.Ct. 1087.

. Id.

. Id. at 80, 105 S.Ct. 1087.

. Lowe, - So.3d at - (citing Fisher, 587 So.2d at 883).