# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01949-COA

L.A. BARKSDALE                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                               APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/15/2013 |
| TRIAL JUDGE: | HON. C.E. MORGAN III |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF STATUTORY RAPE OF A CHILD UNDER FOURTEEN YEARS AND SENTENCED TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO REGISTER AS A SEX OFFENDER |
| DISPOSITION: | AFFIRMED - 04/07/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND MAXWELL, JJ.**

**LEE, C.J., FOR THE COURT:**

PROCEDURAL HISTORY

¶1.    A jury in the Attala County Circuit Court found L.A. Barksdale guilty of statutory rape of a child under fourteen years. The trial court sentenced Barksdale to thirty years in the custody of the Mississippi Department of Corrections. Barksdale filed post-trial motions,

which were denied by the trial court. Barksdale now appeals and asserts the following: (1) the trial court erred by conducting the trial in his absence, and (2) the trial court erred by denying his request for funds to hire an expert witness.

FACTS

¶2. On October 19, 2012, thirteen-year-old Jane[1] spent the night with her half-siblings at their father's home in Kosciusko, Mississippi. Barksdale, forty-nine, was also at the home. Jane had met Barksdale on two prior occasions. He sometimes babysat Jane's half-sisters.

¶3. Jane testified that in the early morning hours of October 20, 2012, Jane was sleeping on the couch when Barksdale got on top of her, pulled her pants down, and had vaginal intercourse with her. Jane testified that she cried and tried to shove Barksdale off of her, but she did not call for help. Jane testified that after Barksdale ejaculated inside of her vagina, he stood up, handed her ten dollars, and went to the bathroom. While Barksdale was in the bathroom, Jane ran to her half-sister's room to tell her what had happened. Jane's half-sister then woke Clifford, her father, and told him. Clifford got up, knocked on the bathroom door, and asked Barksdale what had happened. Jane testified that when Barksdale did not respond, Clifford went back to sleep. Barksdale left later that morning.

¶4. That same day, Jane went to a fair with her half-sisters and her godmother, Lashonda. Jane testified that she did not tell anyone else about the rape because she was scared. At church the following day, however, Jane decided to tell Lashonda what had happened. Lashonda took her directly to the hospital. A sexual-assault examination was performed by

---

[1] To protect the victim's identity, we call her Jane. The child's family members will be identified only by their first names.

a nurse certified for such examination. Law enforcement was notified and retrieved the material the nurse gathered from Jane.

¶5. When law enforcement went to Barksdale's residence, Barksdale's father answered the door. While Officer Zelie Shaw of the Attala County Sheriff's Department waited at the front door for Barksdale, two other officers apprehended Barksdale as he exited the back door. After Barksdale was advised of his *Miranda*[2] rights, he gave a written statement. In his statement, he admitted to being at Clifford's home the night of the incident, but denied sexual contact with Jane. Officer Shaw also obtained a buccal swab for DNA analysis from Barksdale.

¶6. The State's serological expert, Amy Malone, examined the material the nurse had collected from Jane during her sexual-assault examination. Malone testified that she found sperm cells on the vulvar swabs, vaginal swabs, and rectal swabs taken from Jane. Malone explained that sperm cells can survive in a vaginal cavity for three to four days.

¶7. Jana Burchfield, the State's DNA expert, compared Jane's known DNA profile and the DNA on Barksdale's buccal swab to the DNA found on the swabs containing sperm cells. She testified that the swabs taken from Jane during her sexual-assault examination contained epithelial cells, the female portion, and sperm cells, the male portion. Burchfield testified that the DNA in the epithelial cells matched that of Jane. Burchfield testified that she was unable to separate the epithelial cells from the sperm cells completely, so the male portion contained two profiles, a dominant profile that matched Jane and a minor profile that

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

matched Barksdale. Burchfield stated that ninety-nine percent of individuals selected at random from the general population would be excluded as possible contributors to the mixture in the sample.

## DISCUSSION

### I. TRIAL IN ABSENTIA

¶8. Barksdale argues that the trial court erred by conducting the trial in his absence without proof that he had been notified in writing of his trial date and without proof of a free, voluntary, and knowing waiver of his right to be present at trial.

¶9. Barksdale asks this Court to review the issue as plain error. In *Blanchard v. State*, 55 So. 3d 1074, 1077 (¶16) (Miss. 2011), the Mississippi Supreme Court stated:

> When a defendant fails to make a proper objection at trial, and thus fails to preserve the issue for appellate review, we will reverse if the error involved a fundamental and/or substantive right and resulted in a "manifest miscarriage of justice" or "seriously affected the fairness, integrity or public reputation of judicial proceedings."

(Quoting *Brown v. State*, 995 So. 2d 698, 703 (¶21) (Miss. 2008)).

¶10. "An accused's right to be present at every stage of his trial is guaranteed by the Sixth Amendment to the United States Constitution and Article 3, Section 26, of the Mississippi Constitution." *Blanchard*, 55 So. 3d at 1077-78 (¶17) (citations omitted). "This right may be waived based on a defendant's 'willful, voluntary, and deliberate absence from trial.'" *Id.* at 1078 (¶17) (quoting *Jay v. State*, 25 So. 3d 257, 264 (¶39) (Miss. 2010)). Mississippi Code Annotated section 99-17-9 (Rev. 2007) provides:

> In criminal cases the presence of the prisoner may be waived (a) if the defendant is in custody and consenting thereto, or (b) is on recognizance or

4

bail, has been arrested and escaped, or has been notified in writing by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or is in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment made final and sentence awarded as though such defendant were personally present in court.

Thus, an accused may be tried in absentia if he "is on recognizance or bail . . . and . . . is in any way in default for nonappearance." *Id*.

¶11. In *Blanchard*, the Mississippi Supreme Court found that it was not plain error to try Blanchard in absentia where Blanchard's attorney "told the court that she had been in contact with Blanchard numerous times, and that he was well aware of his trial date." *Blanchard*, 55 So. 3d at 1077 (¶11). Blanchard, who had been released on bail pending trial, told his attorney on the eve of trial that he would be present, but failed to appear. *Id*. at (¶15). There was no evidence that his absence was not willful, voluntary, and deliberate. *Id*. at 1078 (¶19).

¶12. Barksdale was released on bond pending his trial. On August 13, 2013, the trial court held a docket call to set the criminal docket for the September term of court. Barksdale was not present at the docket call. Barksdale's attorney, Rosalind Jordan, was present and agreed to a September 12, 2013 trial date.

¶13. Barksdale did not appear for trial on September 12. In deciding whether to proceed in Barksdale's absence, the trial court questioned Jordan regarding her contact with Barksdale about his trial date. Jordan responded that she met with Barksdale on August 14, the day after docket call, and advised him of his trial date. She spoke with Barksdale on August 19, 20, 21, 23, 26, 27, and 30 via text message or telephone. On August 30,

Barksdale gave Jordan the names and addresses of two witnesses he wanted to subpoena for the trial date. Jordan confirmed this information with Barksdale on September 6. From this date on, Jordan sent multiple text messages to Barksdale, called his home and his cell phone, and left detailed messages regarding trial, to which he never responded. Jordan called Barksdale the night before trial and on the morning of, and left messages reminding him of his trial date, but Barksdale never returned her calls. Barksdale's family members were also advised of the trial date. Jordan stated that she knew of nothing that would indicate that Barksdale's absence was involuntary and that he understood he had to be at trial on September 12.

¶14. The State also elicited testimony from Officer Shaw, who said he went to Barksdale's residence the day before trial and spoke to Barksdale's sisters. They said they had not seen or heard from Barksdale for several days and that they knew his trial was scheduled for the following day.

¶15. The trial court found:

> The facts before the Court are that Mr. Barksdale has . . . had substantial communication with his attorney. And specifically, in relation to the preparation for the trial today to the extent that he even requested certain witnesses to be subpoenaed, which his attorney did, knowing that those would be subpoenaed for today. And then . . . he has now failed to communicate with his attorney for almost a week now and has absented himself from his residence. Apparently, the facts are that his family does not know where he is and nobody has . . . had no [sic] communication with anybody. And he is not here. The Court finds pursuant to the holding in *Wales* [*v.*] *State* and . . . Section 99-17-9 that Mr. Barksdale has waived his right to be present here today, and the State is entitled to try him in his absence. That will be the ruling of the Court.

¶16. Because Barksdale was released on bond pending trial and was in default for

nonappearance, it was not plain error to conduct his trial in absentia. He was well aware of his trial date, understood he had to be at trial, and offers no proof that his absence was not willful, voluntary, and deliberate. This issue is without merit.

## II. DENIAL OF FUNDS FOR AN EXPERT WITNESS

¶17. Barksdale argues that the trial court erred by denying his request for funds to hire an expert witness. Barksdale, who was appointed counsel due to his indigent status, argues that an expert was necessary for the presentation of an adequate defense because the State's case depended on expert testimony.

¶18. Barksdale's argument relies heavily on *Lowe v. State*, 127 So. 3d 178 (Miss. 2013). In *Lowe*, the Mississippi Supreme Court found that "the circuit court deprived Lowe of a fundamentally fair trial by denying him the assistance of a computer forensics expert when the State relied exclusively on its own expert to identify Lowe as the perpetrator of the offenses charged." *Id*. at 181 (¶13). The court noted that "[t]he United States Supreme Court 'has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense.'" *Id*. (quoting *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985)). "[A] trial court must provide expert assistance to an indigent defendant when denial of such assistance would render the trial fundamentally unfair." *Id*. (citing *Fisher v. City of Eupora*, 587 So. 2d 878, 883 (Miss. 1991)). This does not "mean that an expert must be supplied any time an indigent defendant requests one." *Fisher*, 587 So. 2d at 883. Whether an indigent defendant must be provided expert funding is decided on a case-by-case basis, and we review

7

this issue for an abuse of discretion. *Lowe*, 127 So. 3d at 183 (¶20).

¶19.    In *Townsend v. State*, 847 So. 2d 825, 829 (¶13) (Miss. 2003), the Mississippi Supreme Court stated:

> In determining whether a defendant was denied a fair trial because of failure to appoint or allow funds for an expert, some of the factors to consider are whether and to what degree the defendant had access to the State's experts, whether the defendant had the opportunity to cross-examine those experts, and lack of prejudice or incompetence of the State's experts.

(Citing *Fisher*, 587 So. 2d at 883). We may "also consider[] to what extent the State's case depends upon the State's expert, and the risk of error in resolving the issue for which the expert is requested." *Id*. (citations omitted).

¶20.    The trial court denied Barksdale's pretrial motion for funds to retain a DNA expert based on its findings that "there [was] not a substantial need for [e]xpert [a]ssistance in the [f]ield of DNA analysis" and that "based upon the [d]efendant's finances[,] the [d]efendant [was] not indigent for purposes of [the] motion." We agree with Barksdale that the trial court erred in finding Barksdale was not indigent for purposes of the motion. In order to appoint counsel, the trial court must first be satisfied that the defendant is indigent. Miss. Code. Ann. § 99-15-15 (Rev. 2007). Since Barksdale was appointed counsel, the trial court had already determined that he was indigent. Such an error, however, was harmless because whether Barksdale was denied a fair trial does not turn on his indigency. While Barksdale must be found to be indigent to receive funds to retain an expert, "[t]here is not a constitutional obligation by the State to provide an indigent defendant with the costs of expert assistance upon every demand." *Grubbs v. State*, 956 So. 2d 932, 941 (¶30) (Miss. Ct. App. 2006)

8

(citation omitted). Instead, we turn to a consideration of the factors listed above to determine whether Barksdale was denied a fair trial.

¶21. Barksdale concedes he had access to the State's expert. Barksdale had the opportunity to cross-examine the State's expert, and a review of the record indicates that Barksdale's attorney's cross-examination was effective. There is nothing to indicate, and Barksdale does not argue, that the State's expert was prejudiced or incompetent. Barksdale does argue, however, that the State's case depended almost entirely on the DNA expert's testimony. This argument is without merit. Jane's testimony was credible and uncontradicted. "[T]he unsubstantiated and uncorroborated testimony of a victim is sufficient to support a guilty verdict if that testimony is not discredited or contradicted by other credible evidence[.]" *Price v. State*, 898 So. 2d 641, 651 (¶23) (Miss. 2005). The other evidence showed that Barksdale and Jane were at Clifford's house at the same time, and sperm cells were found on Jane's vulvar, vaginal, and rectal swabs. As Officer Shaw waited for Barksdale at the front door of Barksdale's house, he was apprehended by other officers exiting the back door. Even without the testimony of the State's expert, the evidence against Barksdale was overwhelming. Barksdale was therefore not denied a fair trial.

¶22. **THE JUDGMENT OF THE ATTALA COUNTY CIRCUIT COURT OF CONVICTION OF STATUTORY RAPE OF A CHILD UNDER FOURTEEN YEARS AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO REGISTER AS A SEX OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ATTALA COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**