# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01398-COA

**MARIO HARRIS A/K/A MARIO PIERRE HARRIS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/07/2014 |
| TRIAL JUDGE: | HON. MARGARET CAREY-MCCRAY |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY:  BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, MURDER, AND SENTENCED TO LIFE IMPRISONMENT, AND COUNT II, DRIVE-BY SHOOTING, AND SENTENCED TO THIRTY YEARS, WITH THE SENTENCES IN COUNTS I AND II TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED - 03/29/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WILSON, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     A Leflore County jury convicted Mario Harris (a.k.a. "Pierre") of the murder of Cornelius Banks (a.k.a. "Bobblehead") and the injuring of Jared Moore in the commission of a drive-by shooting.  Harris was sentenced to life imprisonment for the murder charge, and thirty years for the drive-by-shooting charge, to be served concurrently in the custody of the Mississippi Department of Corrections, as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015) without the possibility of parole or probation. Harris now appeals, raising three issues:  gruesome photographs entered into evidence prejudiced him, the verdict was against the overwhelming weight of the evidence, and cumulative error.  Finding no error, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2.     This case arises out of an early morning drive-by shooting in Greenwood, Mississippi, on November 8, 2011.  The incident occurred on the corner of McLaurin and Roosevelt Streets in front of Reno's Restaurant.  Due to the shooting, Banks was killed, and five other men were injured.  Eyewitness accomplices Maurice Tims and Michael Johnson testified for the State at trial, as did police officers responding to the scene, and expert witnesses. Another passenger involved in the incident, Alfred Lacy (a.k.a. "Cali"), did not testify.

¶3.     According to Tims, late in the evening on November 7, 2011, he was driving his 1997 grey Grand Marquis near Bishop Apartments, when he was flagged down by Harris and Michael Johnson (a.k.a. "L.L.") in front of an abandoned house.  They wanted a ride "uptown."  Lacy joined them.  Tims, smoking a marijuana blunt, agreed to give them a ride. Harris returned to the abandoned house "to go get something."  Johnson and Lacy sat in the

2

backseat, and Harris returned with a black SKS assault rifle and sat in the front-passenger seat. Tims claimed that when he became upset about Harris's rifle, Johnson put a gun to his head from the rear driver's-side seat, and told him to drive the car. Harris said, "we going to handle this business." Tims claimed ignorance of what the "business" was.

¶4.   Tims testified that he drove them toward Reno's on the corner of McLaurin and Roosevelt Streets. After making the block twice, they stopped as a crowd of people exited Reno's. The restaurant was on Tims's right side. Harris stated, "there he goes right there," and put his window down. Harris and Lacy, both on the passenger side of the vehicle, began shooting into the crowd outside of Reno's. Lacy used a handgun, and Harris used the SKS assault rifle.

¶5.   While some of Johnson's testimony was inconsistent with that of Tims, Johnson also testified that Harris fired the SKS rifle out of the window of Tims's vehicle the night of the shooting. Johnson admitted he had a gun but denied shooting it. Someone in the crowd returned fire as they sped off. Law enforcement began chasing them. When they reached a dead-end, the four men ran in different directions.

¶6.   The first police officer to arrive on the scene of the shooting was Officer William Nevels of the Greenwood Police Department (Greenwood P.D.). At approximately 1 a.m. on November 8, he was patrolling the area near McLaurin Park and heard gunshots. Following the sound, he drove to the scene at Reno's, where he found a black male, later identified as Rodera Hunt, lying face down, bleeding from his back. Jared Moore was standing near a vehicle, yelling "I'm hit." There was an unresponsive black male, later

3

identified as Banks, lying next to some garbage cans near a wall, with a gunshot wound to his head. Three other injured men were identified as Carlos Jones, Marquazy Gray, and Artez Gray. During Officer Nevels's testimony at trial, a photograph of Banks's body at the scene was allowed into evidence, over the objection of the defense.

¶7. Officer Rodney Spencer of the Greenwood P.D. was also on patrol that evening. He testified that he heard multiple gunshots fired and headed toward the area near Reno's, where he noticed either a gray "Crown Vic" or a Grand Marquis traveling at a high speed. Officer Spencer pursued the vehicle, which disregarded all traffic signals and his own blue lights. At a dead-end, "four or five guys" wearing dark clothes jumped out of the vehicle and fled on foot. Upon searching the abandoned vehicle, Officer Spencer found two guns lying on the seat – a Norinco SKS assault rifle and a Jimenez .380 pistol. Johnson was later identified as the owner of the pistol.

¶8. At the scene of the abandoned vehicle, Captain Talisa Lewis of the Greenwood P.D. noticed a black male dressed in dark clothing running into a residence at approximately 1 a.m. on November 8. She called other officers, including Officer Spencer, to investigate the apartment. The man who answered the door consented to a search of the dwelling. Inside, officers discovered a small child sitting straight up in bed and "a body-like object" hiding under the covers. Lacy was discovered hiding in the bed, naked and sweating.

¶9. Investigator Toby Meredith of the Greenwood P.D. arrived at the scene of the abandoned vehicle, which he testified was a 1997 Mercury Grand Marquis. He photographed the vehicle's tag, which was later found to be registered to Tims, and placed the two firearms

4

into evidence. The pistol's magazine was fully loaded. Inside the vehicle, Investigator Meredith found four SKS shell casings.

¶10. Later that morning, Tims found out the abandoned vehicle had been traced back to him. He went to the police station and talked to Investigator Meredith. Initially, he denied any involvement in the shooting, claiming he had been out of town and someone had borrowed his vehicle. Later in the interview, however, he changed his story and identified Harris, Lacy, and Johnson as being in the vehicle with him during the shooting. Of the three other suspects, Lacy was already in custody, Johnson was apprehended three to four days later in Greenwood, and Harris was captured ten days later in Memphis, Tennessee, by United States Marshals.

¶11. In June 2012, Harris, Johnson, Lacy, and Tims were co-indicted for one count (Count I) of murder and five counts of injuring an individual during the commission of a drive-by shooting (Counts II through VI). Later, the State moved to amend Harris's indictment to charge him as a violent habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015).[1] Due to lack of cooperation from all but one of the surviving drive-by-shooting victims, the State moved to dismiss Counts III through VI. The court granted the dismissals, leaving the jury to consider only Count I for the murder of Banks and Count II for the injury

---

[1] After Harris was convicted, an amended sentencing order was issued, sentencing him to the maximum sentence as a habitual offender under section 99-19-81, as his two prior felonies of burglary of a dwelling and possession of a firearm by a convicted felon did not meet the requirements for the violent-habitual-offender statute, section 99-19-83. *See Brown v. State*, 102 So. 3d 1087, 1092 (¶21) (Miss. 2012) (holding burglary of a dwelling is not a per se "crime of violence" under section 99-19-83 absent proof of an act of violence during the commission of the burglary).

5

of Moore during a drive-by shooting.[2]

¶12.  During the three-day trial, testifying for the State were five Greenwood police officers, three expert witnesses, as well as Johnson and Tims.  As previously stated, Johnson's testimony varied from that of Tims on some matters.  Johnson stated Lacy had called him asking to borrow his vehicle to go shoot Artez Gray, but Johnson refused.  He then drove toward Bishop Apartments, where he got in the vehicle with Harris, Lacy, and Tims.  Johnson confirmed Tims's testimony that Harris directed Tims on where to drive, and claimed that after Harris said "there's Artez," Harris and Lacy opened fire.

¶13.  A letter Johnson later wrote, while out on bond, to Harris in prison was admitted into evidence.  In the letter, Johnson claimed that he just went along with a story Greenwood police officers coerced him into telling, implicating Harris in exchange for lenient treatment regarding his own charges.  On the stand, however, Johnson said the letter "was a fake" because he did not want to be a "snitch," and he was just trying to help Harris.  Johnson also stated that he never put a gun to Tims's head to make him drive.

¶14.  The State's forensic pathologist testified that twenty-one-year-old Banks died from two gunshot wounds, to the head and foot, respectively.  The trajectory of both bullets went from left to right.  The bullet to his head entered behind his left ear and existed at the right ear.  The State's expert forensic scientist specializing in latent-print examinations testified that a fingerprint lifted from the front-passenger door of Tims's vehicle matched a print belonging to Harris.  No prints were able to be lifted from the SKS assault rifle found in the

---

[2]  Moore was later killed in January 2013 during an unrelated shooting.

front seat of Tims's vehicle. The State's firearms expert testified that three shell casings found on the street at the scene of the shootout had been fired from the SKS assault rifle. A bullet fragment, recovered from the seat of a vehicle at the scene, which had been shot numerous times, was also fired from the SKS firearm. Finally, several shell casings found in Tims's vehicle were fired from the SKS rifle.

¶15. Joe Ann Harris, the defendant's mother, was the only witness to testify on his behalf. She claimed that Harris knocked on her window at approximately 1:20 a.m. He was intoxicated, and she helped calm him down after he became sick in her bathroom. She claimed he was dressed in white with no jacket.

¶16. The jury deliberated approximately fifty minutes before returning a guilty verdict on both counts.

## ANALYSIS OF THE ISSUES

### I. Photograph

¶17. Harris claims the trial court erred in admitting, over the objection of defense counsel, a photograph of Banks's body at the crime scene. Harris argues the photograph was more prejudicial than probative, and introduced by the State primarily to inflame the passion of the jury.

¶18. Admissibility of photographs of the victim lies within the sound discretion of the trial court, whose decision will be upheld unless there is an abuse of discretion. *Manix v. State*, 895 So. 2d 167, 177-78 (¶30) (Miss. 2005) (citing *Brawner v. State*, 872 So. 2d 1, 14 (¶37) (Miss. 2004)). The exclusion of relevant evidence is governed by Mississippi Rule of

Evidence 403, which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Our supreme court has stated: "The mere fact that photographs depict an unpleasant or gruesome scene is no bar to their admission if they are relevant." *Walker v. State*, 913 So. 2d 198, 231 (¶118) (Miss. 2005) (quoting *Lanier v. State*, 533 So. 2d 473, 484 (Miss. 1988)). Photographs have evidentiary value when they: "(1) aid in describing the circumstances of the killing; (2) describe the location of the body and cause of death; and (3) supplement or clarify witness testimony." *Id.* at 232 (¶119) (quoting *Spann v. State*, 771 So. 2d 883, 895 (¶31) (Miss. 2000)). "*Some* 'probative value' is the only requirement needed to buttress a trial judge's decision to allow photographs into evidence." *Id.* at 231 (¶118) (quoting *Parker v. State*, 514 So. 2d 767, 771 (Miss. 1986)).

¶19. At trial, during Officer Nevels's testimony describing the appearance of the crime scene, the victims' condition, and the bullet damage, the State offered into evidence several photographs, including one of Banks's body (Exhibit 11-V) to supplement Officer Nevels's testimony. The State responded to the defense objection by stating there were several photographs taken of Banks's body and head, but the State chose the least offensive one. The photograph depicts Banks's body and the scene around his body. His eyes and mouth are partially open, and his ear is bloody. His head is lying in a pool of blood, and his body is lying next to several trash cans.

¶20. The defense offered to stipulate that Banks was found shot in the head lying by some garbage cans instead of showing the photograph to the jury, but the State maintained the

8

photograph was not unduly gruesome, stating: "[A] murder case is a murder case, and some of it is going to be shocking. But it's not unduly shocking, and it's not unduly gruesome." The trial court ruled the photograph was admissible.

¶21. On appeal, Harris argues the photograph is irrelevant. We fail to comprehend how the murder victim and the scene of the crime would not be relevant to this trial where Harris was convicted of the murder. Further, as the State notes, Harris did not make the argument that the photograph was irrelevant at trial, just that it was gruesome and should be excluded. A defendant's failure to raise an issue at trial creates a procedural bar that prohibits review of the issue on appeal. *Glasper v. State*, 914 So. 2d 708, 721 (¶30) (Miss. 2005). On appeal, Harris's relevancy argument is barred.

¶22. Regardless of the procedural bar, the argument is also without merit. The photograph aids in describing the circumstances in which Banks was killed, and corroborates Officer Nevels's testimony about where Banks's body was found – outside of Reno's lying near a wall. It is also relevant as to who made the fatal shot due to the trajectory of the bullet in relation to where the accomplices testified that Harris was sitting in the vehicle – on the right-passenger side shooting into the crowd. The photograph also supplements the forensic pathologist's testimony that Harris died from a gunshot wound to the head, but since the photograph is from a distance, and not a close-up of the victim's head, it is not overly gruesome. The photograph aided and clarified many witnesses' testimony, thereby having probative value to show how Banks was murdered by Harris. This value outweighed any prejudicial effect.

## II.     Weight of the Evidence

¶23.    Harris claims that the weight of the evidence was insufficient to support his conviction because of the lack of physical evidence and because two of the State's witnesses – Tims and Johnson – were not credible.  "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."  *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005).  The evidence will be viewed in the light most favorable to the verdict.  *Id.*  Regarding inconsistent or contradictory testimony, "[j]urors are permitted, and indeed have the duty[,] to resolve the conflicts in the testimony they hear."  *Stephens v. State*, 911 So. 2d 424, 436 (¶38) (Miss. 2005) (citation omitted).  "Who the jury believes and what conclusions it reaches are solely for its determination." *Id.*  "Finally, a limited amount of physical evidence, in itself, does not mean that a guilty verdict was against the weight of the evidence." *Blanchard v. State*, 55 So. 3d 1074, 1079 (¶25) (Miss. 2011) (citation omitted).

¶24.    Tims's and Johnson's testimony was key to Harris's conviction.  Both men placed Harris in the vehicle, with an SKS assault rifle, shooting into a crowd of people outside of Reno's.  After the shooting, the four men fled in Tims's vehicle, attempting to evade law enforcement.  They abandoned the vehicle and fled on foot.  Their testimony also corroborated other testimony, including Officer Spencer and Captain Lewis's recount of the chase, and their finding Lacy hiding in an apartment.  Additionally, Tims's testimony that Harris was shooting out of the vehicle's window was confirmed by the ballistic expert's

10

testimony that shell casings were found in the front of Tims's vehicle and had been discharged from the assault rifle. Further, Harris's fingerprints were found on the front-passenger door of Tims's vehicle.

¶25. Their testimony differed only on such points as how the four men initially came together that evening, whether Johnson placed a gun to Tims's head and ordered him to drive, and whether the men were aware they were driving to the McLaurin Park area to shoot Artez Gray. However, it was the jury's province to weigh these inconsistencies and determine credibility. Finally, the jury found Johnson's testimony discounting his letter to Harris more credible than the letter itself, which claimed a police conspiracy to convict Harris. The jury verdict was not contrary to the weight of the evidence.

### III. Cumulative Error

¶26. Harris claims his conviction should be reversed due to the cumulative effect of any errors. "[I]ndividual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007) (citation omitted). However, when there is no error found in the alleged errors, there can be no cumulative error. *Hughes v. State*, 892 So. 2d 203, 213 (¶29) (Miss. 2004) (citation omitted). Here, there were no individual errors, thus no cumulative error.

¶27. For the above reasons, we affirm Harris's conviction and sentence.

¶28. **THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE, AND COUNT II, DRIVE-BY SHOOTING, AND SENTENCE OF THIRTY YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE**

**MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**